

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4939 | **DATE** | 12/19/2002 |
| **CASE TITLE** | William Valtierra vs. Burlington Northern & Santa Fe Railroad Company, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motions for summary judgment and to dismiss (5-1, 8-1) are granted. This case is dismissed with prejudice as to all matters previously decided. With respect to those matters not previously litigated, but not mentioned in Plaintiff's EEOC charge, the dismissal is without prejudice. Judgment is entered in favor of Defendants and against Plaintiff.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | 3 number of notices | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | DEC 20 2002 date docketed | 26 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | 12/19/2002 date mailed notice | |
| | Copy to judge/magistrate judge. | 02 DEC 19 PM 4:39 | | |
| ETV | courtroom deputy's initials | Date/time received in Central Clerk's Office | ETV mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM VALTIERRA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 02 C 4939 |
| ) | |
| BURLINGTON NORTHERN & SANTA FE ) | Judge Rebecca R. Pallmeyer |
| RAILROAD COMPANY and UNITED ) | |
| TRANSPORTATION UNION, LOCAL 445, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff William Valtierra alleges in his *pro se* lawsuit that his union, United Transportation Union ("UTU"), and his employer, Burlington Northern and Santa Fe Railway Company ("BNSF"), discriminated against him on the basis of his race and/or national origin in violation of Title VII of the Civil Rights Act of 1964, and violated the Americans with Disabilities Act by failing to accommodate his disability. Defendant UTU has filed a motion to dismiss, and Defendant BNSF moves for summary judgment. The bases for both motions are the same, however: Defendants claim that this case is barred by the doctrine of res judicata, by applicable time limitations, or by the requirement that allegations of discrimination be presented first to the EEOC. For the reasons explained below, both motions are granted.

### FACTUAL BACKGROUND[1]

Valtierra is an Hispanic American of Mexican descent who works for Burlington Northern

---

[1] For purposes of a motion to dismiss, the court presumes the truth of all well-pleaded factual allegations; on a motion for summary judgment, the court considers the parties' Rule 56.1 Statements, drawing inferences and resolving disputes in favor of the non-moving party. In addressing either of these motions, the court will take judicial notice of a lawsuit filed by Plaintiff in this court in 1998. To the extent that UTU is arguing *res judicata* on its motion to dismiss, the court acknowledges that under FED. R. CIV. P. 8(c), *res judicata* is an affirmative defense which should ordinarily be decided in the context of a motion for summary judgment rather than a motion to dismiss. *Anderson v. State of Illinois*, 70 F.3d 1274 (7th Cir. 1995). Because Plaintiff and UTU have provided evidentiary material and because Plaintiff has had the opportunity to respond to BNSF's motion for summary judgment on this same issue, the court will proceed to a ruling on both motions. It is clear, further, that a statute of limitations defense may be addressed in a Rule 12 motion. *See Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 669 (7th Cir. 1998), citing *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998) ("Granting a motion to dismiss based on a limitations defense is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred.") As explained here, the facts relevant to Defendants' *res judicata* and limitations defenses are not in dispute.



and Santa Fe Railway Company ("BNSF") as a railroad engineer. (Plaintiff's Complaint ¶ 4) (hereinafter, "Complaint.") In 1977, Valtierra was hired by Sante Fe as switchman and brakeman; he later became an employee of BNSF after Burlington Northern merged with Santa Fe. (*Id.* ¶ 7.) The following year, Valtierra became a member of the UTU, the union that represents a number of classes of employees employed by BNSF, and remains a member of UTU. (*Id.* ¶¶ 6, 8.) In 1979 and 1980, Valtierra applied for promotion to a position as an engineer; those applications were denied, Plaintiff claims, for discriminatory reasons. (*Id.* ¶ 9.)

In 1984, Valtierra obtained the position of conductor and held this position until January 30, 1994, when he slipped on a patch of ice in the train yard, injuring his left shoulder. (*Id.*) Valtierra was away from work on an authorized medical leave until early 1997, when his doctor cleared him for work as an engineer and he entered the engineer training program. (*Id.* ¶¶ 10, 11.) Even before Valtierra finished engineer training, he became concerned that he would not have steady job assignments throughout the year because his seniority dated only from the time of his promotion. (*Id.* ¶ 11.) When he later learned that other conductors had been admitted to engineering training as early as 1994, Valtierra concluded that had he not been injured in 1994, he would have been trained as an engineer at that time and promoted no later than 1995. (*Id.*) Other BNSF conductors advised Valtierra that persons admitted to engineering training who were unable to complete it due to a leave were later admitted to the next available training slot and had seniority adjusted to reflect the positions they had held on the conductor list. (*Id.*)

Seeking an improved seniority position, Valtierra contacted Mike Mount, president of the UTU Chicago Division and engineer trainee coordinator. (*Id.* ¶ 12.) Valtierra claims Mount explained the terms of a 1993 agreement and letter of understanding that would support Valtierra's request for an adjusted seniority date, but in fact neither Mount nor UTU General Chairman Jim Nugen made any effort to have Valtierra's seniority position adjusted. (*Id.* ¶ 13.)

After completing the training and passing necessary exams, Valtierra was promoted to the

2

position of engineer and assigned an unadjusted seniority date of August 16, 1997.[2] (*Id.*) Valtierra made repeated attempts to persuade BNSF and UTU to adjust his seniority position, but UTU and BNSF ignored his requests. (*Id.* ¶ 14.) Valtierra alleges, further, that the UTU had violated its own "schedule agreement for scheduled employees" by failing to advise him within 60 calendar days of the rejections of his 1979 and 1980 applications. (*Id.* ¶ 15.) Because his seniority date was not properly adjusted, Valtierra was laid off several times and was forced to transfer to Galesburg, Illinois, resulting in a loss of income, moving expense, and emotional distress. (*Id.* ¶ 16.)

**1998 Lawsuit**

On November 23, 1998, Valtierra filed a *pro se* lawsuit alleging that UTU and BNSF discriminated against him based on his race and/or national origin and failed to accommodate his disability as required by the Americans with Disabilities Act. (1998 Complaint of Employment Discrimination, Exhibit 2 to Defendant's Motion to Dismiss, at 1; Defendant's 56.1 Statement ¶ 9.) On March 17, 1999, Valtierra filed an Amended Complaint through counsel, alleging that UTU and BNSF discriminated against him based on his race and/or national origin in violation of Title VII of the Civil Rights Act; he was retaliated against for opposing the discriminatory conduct; and Defendants violated the Americans with Disabilities Act by failing to accommodate his disability. (Amended Complaint, Exhibit 3 to Defendant's Motion to Dismiss, at 1, 3-6, 10-12; Defendant's 56.1 Statement ¶ 9.) The Amended Complaint made factual allegations detailing BNSF's denial of an appropriate seniority list placement and UTU's failure to assist Valtierra in obtaining the correct seniority date. (*Id.* at 3-6, 10-12.) This 1998 lawsuit ended when the three parties entered into a written Settlement Agreement on March 7, 2000, which states in part:

> The undersigned parties desire to avoid the delay, expense, and uncertainty

---

[2] Valtierra alleges that this date was later moved back to August 9, 1997 by BNSF to "manipulate the court system" (Complaint ¶ 13); he does not explain how this change constituted manipulation, however.

> involved in further litigation by entering into a compromise settlement and agreement concerning all present claims and/or causes of action that Plaintiff has against the Defendants . . . arising out of or in any manner connected with any and all claims encompassed in . . . the lawsuit and Plaintiff's employment with BNSF and Plaintiff's membership in UTU. . . .

(Confidential Settlement Agreement and General Release, Recital 1.9, Exhibit 4 to Defendant's Motion to Dismiss, at 1-3.) The Settlement Agreement carved out one exception to Valtierra's release of claims against Defendants. Specifically, it provided: "Nothing in the foregoing shall be construed to constitute a waiver or release by Plaintiff of Plaintiff's NRAB case and all claims therein, which is currently pending before the National Railroad Adjustment Board. . . . " (*Id.* at 3.) As part of the Settlement Agreement, Valtierra agreed to dismiss the lawsuit with prejudice in exchange for a one time payment of $13,000. (*Id.*)

In fact, however, Plaintiff attempts in this lawsuit to raise the same claims. On March 29, 2002, he filed the EEOC charge underlying the complaint now before this court. That charge asserts:

> I began my employment with the Respondent [BNSF] in 1977. I have submitted several applications to become an engineer. In 1994 I went on medical leave and returned to work in 1997. On or about March 10, 1997, I submitted another application to become an engineer. I was promoted to the Engineer position, however, I was not placed in the correct seniority order. I was not able to appeal the Respondent's decision because the Respondent did not notify me in a timely manner[.] I believe that I have been discriminated against because of my national origin, Mexican, in violation of Title VII of the Civil Rights Act of 1964, as amended in that, similarly situated non-Mexican employees were given full seniority rights.

(EEOC Charge of Discrimination, Exhibit 5 to Defendant's Motion to Dismiss.) The EEOC issued Valtierra a notice of his right to sue on March 29, 2002. (Complaint ¶ 4; EEOC Notice of Right to Sue, Exhibit 6 to Defendant's Motion to Dismiss.) On July 12, 2002, pursuant to a right to sue letter issued by the EEOC, Valtierra filed his *pro se* two-count complaint against BNSF and UTU, alleging employment discrimination based on his race and/or national origin under Title VII of the Civil Rights Act of 1964 and violations of the Americans with Disabilities Act. (Defendant's 56.1 Statement ¶ 3; July 12, 2002 Complaint, Exhibit B to Defendant's 56.1 Statement, at 6-7)

(hereinafter, "2002 Complaint.") In Count I of the 2002 Complaint, Valtierra alleged that BNSF and UTU discriminated against him based on his race and/or national origin by denying Valtierra the right to enter engineer training in 1979 and 1980, denying him a management position, denying him the opportunity to work in the freight pool as a conductor, denying him the proper seniority position on the engineer seniority list, preventing him from parking his car in the handicap zone at work, directing that his vehicle be towed from BNSF property, and denying his claim for damage to his car. (2002 Complaint at 6-7 ¶ 17.) In Count II, Valtierra alleges that the Defendants violated the Americans with Disabilities Act, stating that:

> BNSF [and UTU] discriminated against plaintiff by taking adverse employment actions against him because of his disability, which actions included but not limited to failing to reasonably accommodate plaintiff[']s disability; placing him to the lowest seniority level behind new hired employees and subjecting plaintiff to harassment, ridicule, and criticism because of his disability.

(Id. at 8 ¶ 26.)

## DISCUSSION

Defendants seek dismissal of Plaintiff's complaint on several grounds. For purposes of this opinion, the court focuses on *res judicata*. Under that doctrine, any claims relating to Valteirra's seniority status were the subject of the 1998 litigation and are now barred.[3] In light of this disposition, the court need not devote attention to the matter of timeliness; but there can be little doubt that the time limitations for filing a charge of discrimination provide a second reason for dismissal. Plaintiff's charge, filed years after BNSF and UTU allegedly violated Title VII and the ADA, are clearly untimely. *Sharp v. United Airlines*, 236 F.3d 368, 372 (7th Cir. 2001) ("According to statute [42 U.S.C. § 2000e-5(e)(1)], a plaintiff in a deferral state such as Illinois must file a

---

[3] The court is uncertain why both Defendants have not relied chiefly on the language of the settlement agreement and release as the basis for dismissal of this action, where Valtierra has raised nearly identical claims of discrimination. UTU's motion does invoke this defense, but BNSF has not raised it. Because both Defendants argue for dismissal based on *res judicata*, the court considers that defense here, but notes it is not the only basis for dismissal.

charge of discrimination with the EEOC or equivalent state agency within 300 days after the alleged unlawful employment practice.") Finally, with respect to a handful of allegations presented for the first time in Plaintiff's response to BNSF's motion, the court concludes they are barred from consideration here as beyond the scope of Plaintiff's underlying EEOC charge.

**Res Judicata**

Both Defendants argue that Valtierra's lawsuit is barred by the doctrine of *res judicata* because Valtierra raised the same claims in his 1998 lawsuit, which resulted in a judgment on the merits. For the purposes of determining whether *res judicata* applies to bar a subsequent action, where the earlier action is brought in federal court, the federal rules of *res judicata* apply. *E.E.O.C. v. Harris Chernin, Inc.*, 10 F.3d 1286, 189-90 n.4 (7th Cir. 1993). Under that doctrine, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action . . ." *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir. 1986) (citations omitted). *Res judicata* serves to bar a second suit in federal court when three elements are present: (1) a final judgment on the merits in an earlier action, (2) an identity of the cause of action in both the earlier and later suit, and (3) an identity of parties or their privies in the two suits. *Tice v. American Airlines*, 162 F.3d 966, 970 (7th Cir. 1998), *cert. denied*, 119 S. Ct. 2395 (1999); *Golden v. Barenborg*, 53 F.3d 866, 869 (7th Cir. 1995).

The court will find identity of the cause of action if the plaintiff's new claim "arises from the same incident, events, transaction, circumstances, or other factual nebula as a prior suit." *Okoro v. Bohman*, 164 F.3d 1059, 1062 (7th Cir. 1999). In the event two lawsuits share these elements, the party is not only barred from raising the issues decided in the first suit, but is also barred from raising all issues that could have been raised in the prior action. *Kratville v. Runyon*, 90 F.3d at 195, 198 (7th Cir. 1996).

Defendants urge that *res judicata* bars Plaintiff's lawsuit because Valtierra raised the same discrimination claims against UTU and BNSF in his 1998 lawsuit, which was later resolved on

6

March 7, 2000, when the parties entered a settlement agreement. The court agrees. Neither party to this case disputes that the previous lawsuit filed by Valtierra involved the same parties or that the 1998 lawsuit resulted in a settlement agreement. Nor can there be any argument concerning the identity of the claims raised. In fact, in his "Motion to Advance," filed in response to UTU's motion to dismiss and to BNSF's motion for summary judgment, Valtierra explicitly conceded that "despite Mr. William Valtierra's settling his 1998 lawsuit against the same defandants [sic], I again am suing the same defendants charging defandants [sic] with almost identical claims . . ." (Plaintiff's Motion to Advance, at 1.) Even without this admission, the court would conclude without hesitation that this lawsuit is based on the same events as Valtierra's 1998 lawsuit. In both complaints, Valtierra alleged that UTU and BNSF discriminated against him on the basis of his race and/or national origin and failed to accommodate his disability in violation of the Americans with Disabilities Act. The time period in which Plaintiff alleges the discrimination occurred is identical. In both lawsuits, Plaintiff claims that Defendants' misconduct resulted in depriving Plaintiff of the proper seniority status.

The third element of the test is also met here, because the previous lawsuit resulted in a disposition on the merits. It is clear from the terms of the 2000 Settlement Agreement that Valtierra knew that by entering the agreement he was consenting to the dismissal of his claims with prejudice. Pursuant to that agreement, this court did enter an order of dismissal on March 17, 2000.[4] (Defendant's 56.1 Statement ¶ 10; Order of Dismissal, Exhibit E to Defendant's 56.1 Statement) (hereinafter, "Order of Dismissal.")

In response to the *res judicata* defense, Plaintiff points out that the settlement agreement that resolved the 1998 litigation specifically permits him to proceed in a case pending before the

---

[4] The Order of Dismissal stated "IT IS HEREBY ORDERED, that this action, together with all claims and causes of action set forth in the pleadings, be and is hereby dismissed on its merits with prejudice and without costs." (Order of Dismissal, Exhibit E to Defendant's 56.1 Statement.)

7

NRAB.[5] That provision can not be interpreted as Plaintiff suggests, however, to permit him to return to federal court at any point if he were dissatisfied with the NRAB's resolution of his seniority dispute. Plaintiff also offers additional reasons for the court to conclude that BNSF improperly determined his seniority date. Each of those arguments could have been raised four years ago, however. The 1998 litigation disposes completely of Plaintiff's contention that his unsatisfactory seniority status was a product of discrimination on the part of UTU or BNSF. For this reason, the court need not address Plaintiff's contention that UTU breached a "schedule agreement for scheduled employees" by not informing him within 60 calendar days of the rejection of his application for engineering training in 1979 and 1980. (Complaint ¶ 15.) Valtierra acknowledges that the "schedule agreement" dates from 1978, but he asserts vaguely that he did not learn about it until it was "subpoenaed from a prior case." (*Id.*) He does not suggest UTU or BNSF concealed the existence of the agreement, however, nor does he suggest that he was unable to discover it during the earlier litigation. This "schedule agreement" matter relates to Valtierra's claims, asserted in the 1998 lawsuit, that Defendants discriminated against Plaintiff and violated his rights under the ADA. The doctrine of res judicata bars not only those claims that were decided earlier, but also precludes litigation of any claims that could have been raised in the earlier case. Valtierra offers no basis for the conclusion that matters relating to UTU's scheduling practices could not have been raised in his earlier lawsuit. To the contrary, the context of the earlier complaint makes it clear that those matters could well have been presented and decided. Even if Valtierra did not discover the "schedule agreement" until after the dismissal of his 1998 case, the court concludes that his complaint in this litigation is barred.

---

[5] Plaintiff asserts that his NRAB case also challenged his placement on the engineer seniority list. He claims here that NRAB incorrectly dismissed that claim for lack of jurisdiction and the National Mediation Board upheld BNSF's position on the seniority issue. (Valtierra's Ex Parte Submission to the National Railroad Adjustment Board, Exhibit B to Plaintiff's Motion to Advance to Trial, at 1.) Plaintiff argues that these adverse rulings were erroneous, but does not suggest how they require denial of the BNSF's or UTU's motion in this case.

**New Allegations of Discrimination and Retaliation**

Nor does the fact that Plaintiff has made a handful of new allegations of discrimination save this case from dismissal. Specifically, in addition to the allegations in his 1998 complaint, Plaintiff now alleges that BNSF also violated the Americans with Disabilities Act by denying him the right to park in a reserved spot and towing his car. He asserts, too, that in response to filing this lawsuit, he has been investigated and improperly reprimanded for rule book violations. Plaintiff asserts in response to BNSF's motion for summary judgment that BNSF has delayed in investigating a discrimination claim he filed against a BNSF terminal manager. Much of this discriminatory conduct is alleged to have taken place following the resolution of the 1998 lawsuit. These new allegations are not properly before the court, however, because they are not mentioned in Valtierra's 2002 EEOC Charge. As the Seventh Circuit has explained, a claim of discrimination not included in the underlying EEOC charge may not be presented in a complaint before the court. *See Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 920 (7th Cir. 2000), citing *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994); *Weiss v. Coca-Cola Bottling Co. of Chicago*, 990 F.2d 333, 337 (7th Cir. 1993) ("allegations not contained in an EEOC charge cannot be contained in the complaint . . . .")

The only allegation made by Valtierra in his 2002 EEOC charge was that BNSF has not accorded him appropriate status on the engineer seniority list. His failure to name UTU as a respondent in the 2002 charge provides yet another reason for dismissal of claims against UTU. The 2002 Charge does identify BNSF but makes no mention of these new matters of parking, towing, and allegedly unfair discipline. Because these charges are not included in Valtierra's 2002 EEOC Charge, the court has no jurisdiction to entertain these claims. They will be dismissed without prejudice.

## CONCLUSION

Defendants' motions (Doc. Nos. 5-1, 8-1) are granted. This case is dismissed with prejudice as to all matters previously decided. With respect to those matters not previously litigated, but not mentioned in Plaintiff's EEOC charge, the dismissal is without prejudice. Judgment will be entered in favor of Defendants and against Plaintiff.

ENTER:

Dated: December 19, 2002

REBECCA R. PALLMEYER
United States District Judge